### Ex parte TUCKER.

No. A-11328.   May 31, 1950.

(219 P. 2d 245.)

392

W. R. Tucker, pro se.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, and Sam H. Lattimore, Assts. Atty. Gen., for respondent.

POWELL, J. This is an original proceeding in habeas corpus to secure the release of the petitioner, W. R. Tucker, from confinement in the State Penitentiary at McAlester.

Attached to the petition for writ is a photostatic copy of an information filed in the superior court of Seminole county, in case No. 1514, on March 2, 1949, charging the defendant herein, W. R. Tucker, with the crime of rape, second degree, upon the person of Lottie Blackwell, a female person, and alleged to have taken place on or about March 15, 1948, and it being further alleged that she was then of the age of 14 years, and not the wife of the said W. R. Tucker.

The defendant claims that the trial court did not have jurisdiction to pronounce judgment against him because defendant was not represented by counsel and because the girl involved was his common-law wife. To commence with, we would point out that the burden is on the petitioner to sustain the allegations of his petition, and every presumption favors regularity of the proceedings in the criminal prosecution, and that the scope of inquiry in habeas corpus is limited to inquiry into jurisdiction of court, and while we have held that a court's jurisdiction may be lost at the beginning of trial, in course of the proceedings, due to failure to complete the court by providing counsel for an accused who is unable to obtain counsel, yet this court has also held that a person prosecuted for crime may waive this right guaranteed him by the Bill of Rights, Const. art. 2, § 20, relative to right to be heard by counsel, except minors and incompetents. But courts indulge every presumption against waiver of fundamental constitutional rights and do not presume acquiescence in their loss. Whether one accused of crime has waived his right to the assistance of coun-

sel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 A.L.R. 357; In re Stevens, 81 Okla. Cr. 65, 160 P. 2d 415; Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139; Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18; Ex parte Norris, 88 Okla. Cr. 450, 204 P. 2d 291; Ex parte Robnett, 69 Okla. Cr. 235, 101 P. 2d 645.

Bearing these principles in mind, in this case, then, the question is whether or not the defendant, from the facts to be recited, competently and intelligently waived his right to be represented by counsel. If not, the writ should issue; otherwise, it should be denied.

The photostatic copy of the judgment and sentence on plea of guilty shows that on March 2, 1949, W. R. Tucker entered his plea of guilty to the charge, and was sentenced to serve 15 years in the State Penitentiary in McAlester. He was not represented by counsel.

The petition has attached to it an affidavit signed by Dock Blackwell and by Annie Blackwell, alleged to be the parents of Lottie Blackwell (said affidavit is also signed by Lottie Blackwell), and in which it is set out that commencing in the month of July, 1946, and continuing until March 1, 1949, at the time of his arrest, the defendant and their daughter, Lottie, entered into a common-law marriage contract and did live together as husband and wife with the full consent and approval of the parents of Lottie Blackwell, referred to in said affidavit as Mrs. Lottie Tucker, and that during all this time they lived in a residence owned by W. R. Tucker, and that their daughter still lives in said home. The affidavit further sets out that on or about the 4th day

of February, 1949, both W. R. Tucker and Lottie Black-well had blood tests made in a local clinic in the city of Seminole preparatory to obtaining a license to enter into an orthodox marriage, but before this could be accomplished, W. R. Tucker was arrested and held in the city jail at Seminole charged with statutory rape, or rape in the second degree. That affiants visited the said jail on or about March 4, 1949, for the purpose of completing the arrangements for the statutory marriage, but that the authorities in charge of the jail would not permit the marriage. It is further set out that on March 2, 1949, Lottie Blackwell was between the ages of 15 and 18 years.

The petition sets out that the petitioner was a man 60 years of age, illiterate, not being able to read nor write, just being able to sign his name. He claims that he was denied the right to have the assistance of counsel, and claims to have requested permission to obtain counsel and offered to pay such counsel; and that he was denied the right to be confronted with the witnesses against him. He claims, as stated, that the girl in question was his common-law wife at the time he was charged and sentenced.

The warden of the penitentiary has filed a response, and supplemental response to the rule to show cause issued by this court, and denies generally the allegations in the petition for the writ. The county attorney of Seminole county has also furnished a certified copy of the minutes of the clerk of the superior court of Seminole county involving case No. 1514, together with his affidavit setting out that on March 1, 1949, he obtained a statement from W. R. Tucker and from Lotta Blackwell; that a complaint signed by Deputy Sheriff Bush was filed in the justice of the peace court of Fred Statham,

Seminole District Two, and there the said Tucker had the complaint read in full and that Tucker voluntarily waived preliminary hearing and entered his plea of guilty, and on the same day information was filed in the superior court in and for Seminole county where said information was read by the judge of said court, who advised Tucker of his constitutional rights, and Tucker thereupon entered his plea of guilty to the charge of rape in the second degree, and was in open court thereupon sentenced by the judge to 15 years in the State Penitentiary. This is the maximum punishment for rape in the second degree, Tit. 21 O.S.A. § 1116. The affidavit further charges, contrary to the affidavit of the parents of the girl, that she was born December 7, 1933. No birth certificate was submitted, and the Bureau of Vital Statistics has been unable to find any record of the birth of this girl in this state.

This court has examined the signed statements executed by Lottie Blackwell and W. R. Tucker, which, contrary to the present contention, disclosed that the parents of Lotta were engaged in farming on defendant's place, and there is no claim of a marital status, but an admission of a clandestine relationship, and their relationship mentioned by the county attorney in his affidavit attached to the response as forming part of the evidence on which he based the charge is detailed. The handwriting of defendant is bold and very legible. There is also attached to the supplemental response an affidavit executed by the trial judge, Bob Aubrey, in which he sets out that after the information was read that he asked defendant if he had an attorney. Stated the court:

"I further advised him that he was entitled to an attorney and if he wanted time to employ or secure one, or if he was unable to do so, I as presiding judge, would appoint counsel for him. The defendant advised me in

open court that he had no attorney, did not want an attorney, but wanted to enter a plea of guilty to the charge in the information. Whereupon I, as presiding judge, accepted the plea and upon recommendation of the county attorney sentenced the defendant on the same date to serve a term of fifteen years in the State Penitentiary at McAlester, Oklahoma."

The record shows, however, that the defendant remained in jail two days before being transported to the penitentiary.

Bearing on the claim by defendant that he is illiterate and inexperienced, this court takes judicial notice of the fact that prior to the within matter, the defendant was charged in Seminole county with murder; was tried, convicted of manslaughter in the first degree, appealed his case to this court, which appeal was decided adversely to him, and he was represented by able counsel in both the trial court and on appeal; that thereafter defendant forwarded numerous letters, bearing his signature, to, and conducted fruitful negotiations with, the Pardon and Parole Board, which fact refutes his claim of illiteracy and inexperience. And the records of the court and the affidavit from both the county attorney and trial judge disclose that the defendant properly waived his right and refutes the idea that the court was not completed.

The record in this case refutes the claim of the petitioner that he was not advised of his constitutional rights, and every presumption favors regularity of the proceedings had in the trial court. Ex parte Lee, 87 Okla. Cr. 427, 198 P. 2d 1005; Ex parte Owens, 88 Okla. Cr. 346, 203 P. 2d 447; Ex parte Hampton, 87 Okla. Cr. 416, 198 P. 2d 751; Ex parte Smith, 85 Okla. Cr. 299, 187 P. 2d 1003. The affidavit of the county attorney and the affidavit of the trial judge, are positive, and all cir-

cumstances revealed by the record are in harmony with the idea that the court was properly completed, the defendant having intelligently waived his right to be represented by counsel. Having reached such a conclusion, there is nothing further for this court to consider, based on the facts recited. See the following cases where the writ was denied: Ex parte Marchbanks, 72 Okla. Cr. 380, 116 P. 2d 725; Ex parte Bradley, 72 Okla. Cr. 107, 113 P. 2d 611; Ex parte Wooldridge, 72 Okla. Cr. 292, 115 P. 2d 284; In re Miller, 82 Okla. Cr. 269, 168 P. 2d 897; In re Hazel, 80 Okla. Cr. 66, 157 P. 2d 225; In re Carpenter, 80 Okla. Cr. 78, 157 P. 2d 231; Ex parte Jones, 80 Okla. Cr. 172, 157 P. 2d 916; Ex parte Gault, 78 Okla. Cr. 172, 146 P. 2d 133; Ex parte Owens, supra; Ex parte Hall, 91 Okla. Cr. 11, 215 P. 2d 587; Ex parte Nye, 75 Okla. Cr. 155, 129 P. 2d 614.

The contention that Lottie Blackwell was the common-law wife of the defendant is overcome by the signed statement of Lottie and of the defendant, given the county attorney prior to the filing of charges. And if this girl was under fifteen years of age at the time the act of intercourse took place, this court has held that it is impossible to consummate a common-law marriage prior to the female attaining 15 years of age. Marriage is prohibited even with the consent of the parents prior to the girl reaching 15 years of age. Scott v. State, 85 Okla. Cr. 213, 186 P. 2d 336; Tit. 43 O.S.A. § 3. But the question of the age of the girl was a factual issue to be raised in the trial court, and in this court on appeal, and not by writ of habeas corpus.

It is apparent from the record that no sufficient cause is shown for the issuance of the writ of habeas corpus. It is, therefore, denied.

JONES, P. J., and BRETT, J., concur.