### Ex parte L. L. (JOE) SMITH.

No. A-10746.   Nov. 27, 1946.

(174 P. 2d 851.)

200

George L. Hill and Gotcher & Gotcher, all of McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., and Haskell A. Holloman and Owen J. Watts, Asst. Attys. Gen., for respondent.

JONES, P. J.  This is an original action in habeas corpus instituted by the petitioner L. L. (Joe) Smith to

secure his release from confinement in the State Penitentiary.

The petitioner, age 44, entered a plea of guilty in the district court of Oklahoma county on May 12, 1938, to an information charging him with the crime of murder, alleged to have been committed on December 25, 1930. The information charged the petitioner jointly with Ted Geariepy with having taken the life of Pat J. Durkin. The co-defendant Geariepy was apprehended shortly after the alleged crime was committed, he entered a plea of guilty and received a sentence of life imprisonment in the State Penitentiary. The petitioner Smith eluded the officers and remained a fugitive for several months before being arrested in the State of Texas where he was charged with the crime of forgery. He entered a plea of guilty in the State of Texas to the said charge and was sentenced to serve seven years in the State Penitentiary. After his release from the State Penitentiary in Texas, he was delivered to the officers of Oklahoma county for return to that county to answer the charge of murder which was pending against him. At that time the petitioner had already served in three different penitentiaries for crimes committed by him.

The verified petition alleges that the petitioner was returned to Oklahoma county on May 10, 1938. That a criminal complaint was pending against him before justice of the peace, Everett Chrismore; that on May 11, 1938, he was arraigned before Carl J. Traub, in the absence of Everett Chrismore, and was asked several questions; that later that same day he was again taken before Carl J. Traub, at which time an order was made stating that defendant had waived preliminary examination and was ordered held for trial in the district court, although the petitioner denies he knew that such procedure was being fol-

lowed at the time of his arraignment before the justice of the peace. That after he was bound over to the district court for trial, he had a conversation with the county attorney in which the county attorney told him if he did not plead guilty he was going to file another murder charge against him and try to get him to the electric chair. That he agreed to plead guilty and was taken the next day before the district judge where he entered his plea of guilty to the charge of murder and was sentenced to serve a term of life imprisonment in the State Penitentiary. That when the petitioner was taken before the district judge, the information was not read to him, no copy of the information was furnished to him, he was not advised of his right to counsel and did not have counsel representing him. That he was not advised of his right to have 48 hours additional time after his plea was entered before sentence was pronounced upon the plea, and that he was inexperienced in court matters and did not know that he was entitled to all these rights.

The response controverts all of the material matters alleged in the petition which are contrary to the records in the office of the court clerk of Oklahoma county, including the judgment and sentence that was pronounced against the petitioner. It was further alleged that Carl J. Traub was the duly elected and qualified justice of the peace in and for Oklahoma county at the time of the arraignment of the petitioner before said justice of the peace, and that as such justice of the peace he had full authority to take all the actions which were preformed in relation to petitioner's case.

A copy of the evidence taken before the district court of Pittsburg county in a habeas corpus proceeding before that court was admitted in evidence at the hearing before

this court. In addition, the certified records of Oklahoma county pertaining to the arrest, plea of guilty and commitment of the accused were admitted in evidence before this court.

The testimony of the petitioner as to what occurred at the time he was brought before the district court of Oklahoma county for arraignment upon said charge of murder is as follows:

"Q. Tell the court what happened in the district court room when you were taken there.  A. Well, we went in. There was some kind of court in session, and they discontinued the proceedings that was going on, and I went before the judge and he asked me if I was going to plead guilty, and I told him 'yes' and he asked me if I had been promised any favors or clemency for pleading guilty, and I told him 'no,' as I was advised. He started all over again and said, 'You are charged with murder.' 'How do you plead' and I said, 'Guilty' and he gave me a sentence."

He further testified in connection with the conversation had with the county attorney prior to his arraignment in the district court as follows:

"Q. You told the county attorney you were willing to plead guilty?  A. He showed me all the records in this other fellow's trial and I read over all those and he told me if I would plead guilty he would give me the same the other fellow got."

In the case of Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, 141, it is stated:

"Under Bill of Rights, section 20, Okla. St. Ann. Const., an accused has the right to consult with counsel and to be fully advised as to his rights, and as to the consequences of his act before entering his plea to the indictment or information.

"A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea. * * *

"A person prosecuted for a crime may waive the rights guaranteed to him by bill or rights, relating to trial by jury, right to be heard by counsel, etc. * * *

"Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

In Ex parte Vanderburg, 73 Okla. Cr. 21, 117 P. 2d 550, 551, this court stated:

"Where a prisoner in custody under sentence of conviction seeks to be discharged on habeas corpus, the inquiry is limited to the questions whether the court in which the prisoner was convicted had jurisdiction of the person of the defendant and of the crime charged, and did the court have jurisdiction to render the particular judgment. * * *

"The question as to whether one accused of crime has waived his right to counsel must depend in each case upon the particular facts and circumstances surrounding that case, including the background and experience of accused, and no abstract rules of law may be set forth which will be applicable to every case. * * *

"An accused who has been before various courts forty times on different charges of law violation is not inexperienced in court procedure and did not plead guilty to the charge filed against him in ignorance of his legal rights."

In the recent case of In re George, 83 Okla. Cr. 99, 173 P. 2d 454, 457, decided October 9, 1946, it is said:

"Courts do not look with favor upon a case where a person acquiesces in a sentence pronounced against him for a long period of time and then seeks to have the judgment, regular on its face, set aside by asserting that his constitutional rights were denied him in the proceedings before the trial court, especially where the proof consists wholly of testimony of petitioner."

In the instant case the judgment and sentence is regular on its face. A strong presumption arises in favor of the legality of all proceedings leading to the pronouncement of the judgment and sentence. In order to overthrow this strong presumption, the proof of the petitioner must be so clear and convincing that this court will be bound to know from the evidence that in the proceedings before the trial court the conviction was obtained without due process of law. The age of the petitioner at the time he is arraigned, his education, background and experience are all factors to be considered in this connection. Where a person has prior thereto served a term of imprisonment in the State Penitentiary, the burden upon the petitioner to show that he was not acquainted with court procedure is even greater than it is for one who has never been in the courtroom before his arraignment. This court knows from the experience gained in reviewing hundreds of cases and from reading letters from a large number of inmates addressed to this court setting forth their grievances, that a person incarcerated in the State Penitentiary quickly learns all about the legal rights given by our statutes and the Constitution to one accused of crime.

In the instant case, the petitioner had served three different terms of imprisonment in the penitentiary, and under such circumstances it is almost inconceivable to this court that he was not familiar with court procedure and of his right to have an attorney consult with him before en-

tering his plea. It is our conclusion that the petitioner in his conversation with the prosecuting attorney was attempting to ascertain just how much proof the state had of his guilt of the charge filed against him and could further learn just what were the best terms he could secure if he entered his plea of guilty.

As we view the record, the petitioner has wholly failed to sustain the burden of showing the trial court was without jurisdiction to pronounce the judgment and sentence against him, and for that reason the writ of habeas corpus is denied.

BAREFOOT, J., concurs. DOYLE, J., not participating.